Our next argued case is Somers v. Beiersdorf. Are both counsel present? It looks like you are both there. And we will hear first, I'm afraid I don't know how to pronounce your name. Nada Djordovich, Your Honor. Thank you. You may proceed. Thank you. Good morning, Your Honors. Nada Djordovich for plaintiff appellant Stacie Somers. I would like to reserve four minutes for rebuttal. I will watch my time. Here in this case Ms. Somers has brought a single count against Beiersdorf for violation of California's UCL through Beiersdorf's unlawful sale of Nivea skin firming hydration body lotion with labeled representations that claim that the product affects the structure or function of the consumer's skin. And they did so without first obtaining the premarket approval required under California's Sherman law. The specific representations are that the product improves skin's firmness in as little as two weeks and that it is proven to firm and tighten skin surface in as little as two weeks. Those representations make the product both a cosmetic and a drug, hence the claims here. Now the question before the court today is whether a claim under the unlawful prong of the UCL, which is premised on a violation of California's Sherman law, is impliedly preempted by the Federal Food, Drug, and Cosmetics Act or the FDCA. And the answer to that question is no. This court made very clear in Perez v. NIDA that implied preemption under the FDCA will only bar a state law claim if the claim exists solely by virtue of the FDCA. That is not the case here. Ms. Summers' claim exists by virtue of the unlawful prong of the UCL based on an underlying violation of California's Sherman law. Those are both independent state laws that are allowed, and her claim is therefore not solely based on a violation of the FDCA. Now the burden to show preemption here is Biersdorf's, and it cannot overcome that burden. The first hurdle which it cannot overcome is the presumption against preemption. That is a strong presumption. It's a starting point for every preemption analysis in every case addressing that issue. Here that presumption would be that Congress did not intend for the FDCA to supplant claims brought under the UCL, including claims based on violations of California's Sherman law. Excuse me. I should ask you about the thing that concerns me about your argument. Under the state law, the state law says you can't sell, deliver, or give away any drug unless the drug has been approved under the federal act. So the only substantive standard here is federal. And I don't understand how that is in any way independent of the federal law because that's the same rule as the feds have. You're not supposed to sell a drug if we haven't approved it. And here you say, yeah, we agree. You don't sell it unless the feds have approved it. So why is that independent? Because in this case, California itself has expressly stated that it is incorporating all of the provisions of the federal law as California's own laws and regulations. But that's not what it says. Well, I mean, in a sense it's what it says, but basically all it is is referring solely to the federal law as the touchstone. So if you meet the federal requirement, you meet both federal and state. It doesn't seem to me to be analytically independent in any way. Well, Your Honor, that's also what makes it a parallel state law, and that's allowed under the express preemption provisions of the FDCA. So we have to meet the FDCA. Counsel, there are certain kinds of laws that are more parallel. For example, anti-discrimination laws, the federal law will say you can't discriminate because of the following five categories. And the state law will similarly say you can't discriminate on the basis of these five or six or seven categories. But it doesn't refer to the federal law, and it can develop independently as to what discrimination means or what these categories mean. But that isn't this kind of case. That's why I have a hard time seeing that it's parallel rather than simply a federal state. You have to determine the federal answer only. Well, in this case, Your Honor, both statutes, both the California Sherman Law and the FDCA expressly define what counts as a drug. And then they both say that you can't market or sell a drug without an approved new drug application. So in that case, they are parallel. The California Sherman Law does also state that you need an NDA approved either under federal law or under a California-specific procedure. So that option is available for some reason. I had a question about that because that does seem to be an important, potentially an important distinction that the option for state-level approval makes there be some kind of independent requirement. But when I looked at your complaint, and maybe this goes to whether you stated a claim rather than whether it's preempted, but did you allege in your complaint that this was not approved by the state? Because when I look at the complaint, it's all about what the FDA hasn't done. And I didn't see that you made an allegation that this does not have state approval. Is that in there? I don't know that it is. I also honestly at this point don't know if California's state approval process is active or if they simply defer to the FDA in this case. But I do know that that option is still a viable option in the standard. But isn't it an element of your claim? Doesn't it have to be an element of the claim that this was not approved by the state? The element of our claim is that it violates the Sherman Law, and it does violate express provisions of the Sherman Law, which state that you can't market or sell a drug without an approved NDA. I'm not sure we're disagreeing, but I just want to be clear. To establish that it violates the Sherman Act, you need to show that it was not approved by the federal government and it was not approved by the state. Is that right? I don't believe so, Your Honor. I believe that because either option is available under the Sherman Law, you would need to show that it was not approved by one or the other. But the other issue here, Your Honor, is this is actually a UCL claim. It's a consumer protection claim and under a competition claim. So in this instance, the Sherman Law is simply borrowed to show what activity is unlawful. We're not trying to enforce the FDCA in any manner. We can't. That's not available under the UCL, nor is it something we're trying to do. In this case, we're trying to get damages for the harm caused to consumers by their purchase of a product that should not have been on the market. There's additional harm here to other competitors who did properly go through the procedures. If Congress appeals the FDCA tomorrow, would you have a claim here? Essentially, at that point, what you would do is simply insert the same provisions into it. And we cited several cases in our brief about that fact, that mirroring provisions in the FDCA or just referring to them in the state statute doesn't make them an attempt to enforce the FDCA. It's just there so that every time Congress were to make a change, you don't have to go and rewrite the entire state law. And there was a case— Doesn't that suggest enforcing a federal requirement here that the FDCA disappears tomorrow? I mean, it basically seems like you don't really have a claim here. You're trying to enforce the federal process. Again, I think this is kind of similar to what Judge Graber was saying. It's truly parallel. You have a state anti-discrimination law and a federal anti-discrimination law. But as far as discrimination on the basis of protected class, the federal law disappears. We still have that underlying substance of state law here. If you're borrowing, it seems like if the federal law disappears, you won't really have a state in mind. Well, the other issue— I mean, again, there is still a provision in the state law for it to set up its own procedures. But the other issue here is that Section 379R of the FDCA, which governs non-prescription drugs, such as the lotion at issue here, has a savings clause. That savings clause is in addition to the provision that sets out the boundaries of express preemption. And that savings clause specifically says, nothing in this section shall prevent a state or political subdivision thereof from enforcing under any relevant civil or other enforcement authority a requirement that is identical to a requirement of this chapter. And that's—I mean, that is exactly what California's Sherman law is with respect to non-prescription drugs. Can I go back to you— May I go back to your answer to Judge Lee's question? Because I thought I understood your position, but now I'm kind of confused. Because I thought your answer would be that the Sherman law says, you know, you can't sell something if it's a drug that's not approved by the FDA or not approved by the state. And so if the FDCA disappeared, you would still have this law. You know, the first part of it would become irrelevant, but you would be able to say, well, this is a drug, it's not approved by the state, therefore it violates the state law. But it sounds like that wasn't your answer. So maybe you can elaborate on that. It's both. There is that provision that does exist in the law. So to the extent, you know, that that ever became necessary, it's there. But it is also the case that the fact that there's a direct reference to the FDCA and to requirements of the FDCA in the Sherman law does not make the Sherman law itself an attempt to enforce the FDCA. You know, again, in Clan C.V. Bromley T., the court there explained that the claim does not depend on the FDCA except in the sense that the Sherman law mirrors the requirements. And so violation of the independent Sherman law would be a valid state cause of action even if the, you know, FDA ceased to exist. And so the claim there was not preempted under the implied preemption provisions. And states all the time use shorthand in their statutes. Again, it's for convenience. That was addressed in the In re Trader Joe's tuna litigation. And the issue here is not actually the NDA process itself. Had Bierstorff chosen to actually submit an NDA application, had the FDA approved it or for whatever reason expressly told them, oh, you don't need to do this, we wouldn't have a claim because at that point the FDA would have taken action and a claim like ours would conflict with that. But that's not the issue here. What we're trying to address is harm to consumers. And that is within the state's traditional powers and is just the sort of claim that the FDCA preserves. And essentially arguing that the direct mention of needing a NDA approved by the FDA would make this not an independent law, would invalidate all of the drug-related provisions of the Sherman Act. And it would invalidate them not just with respect to claims brought under the UCL, but with respect to any actions brought by the state of California. And that certainly, I don't believe that that's the intent. I don't believe that's what this Court's rulings or Supreme Court rulings today state. There's supposed to be a balance between federal and state and a role for both. And in this case, Congress gave states the authority to enact parallel laws, and they meant parallel laws regarding drugs. And with respect to the non-prescription drugs, they expressly included a savings clause. That savings clause also looked at all of Section 379R, including the savings clause, was actually enacted in 1997. So that's more than 20 years after the medical device amendments, which don't contain a savings clause, and it's certainly well after both California's Sherman Law and the UCL came into effect. And Congress's inclusion of that clause was intentional. They didn't include it in other places, they did it here on purpose, and they knew about the laws that were suing under being in place and said, hey, nothing in this statute will stop, prevents California from enforcing laws exactly like the Sherman Law here, and in this case, California has also said that in addition to its own ability to enforce the Sherman Law, there's a private right of action by way of the UCL. And that's within its valid enforcement authority. Counsel, would you wish to save any rebuttal time? You're down to about a minute and a half. Yes, Your Honors, unless you have other questions. Thank you. Thank you. We'll hear from Ms. Flint. Good morning, Your Honor. Tacey Flint for FLE Beiersdorf. The only claim that PLAIF is advancing here for why the lotion is supposed to be unlawful is that it wasn't subjected to the FDA's federal new drug application process. Just as you observed, Judge Miller, the complaint is very clear on this score. There are two paragraphs articulating a theory for why the lotion is supposed to be unlawful. They're paragraphs 19 and 31, and both refer explicitly to the FDA new drug approval process. Counsel, let me ask you something more on the theoretical level. In this sense, I don't want you just to rely on what the complaint says. The state statute has alternatives. You can't sell a new drug if it satisfies either of the following criteria. Not both, but either. Excuse me. One, it's been approved. Excuse me. Sorry. One is approval by the federal agency, but the second is approval by the state department under rules that are set out in the statute. And why isn't that second part not preempted? Everything, Your Honor, as observed is true of the Sherman Law, and if there were a claim presented that a drug violated the Sherman Law or violated the UCL and the Sherman Law for failure to satisfy Part B, for failure to proceed through a state regulatory process that it was required to proceed through, that would not be preempted under Buckman. But that just isn't this case and is not the theory that Summers has ever advanced. We already talked about the complaint, the two paragraphs in that complaint, but Summers has been completely consistent about that throughout the case. For example, in the citizen position that she filed with the FDA in 2015, the district court stayed this litigation so that the plaintiff, then Franz, could pursue a regulatory solution. She went to the FDA, and in her petition she wrote, while there is no private right of actions or violations of the FDCA pursuant to federal law, such violations are actionable under California law. That's at ER 253. And that's just a clear encapsulation of what the plaintiff's claim is trying to do, use a private right of action created by California law to pursue an alleged violation of the FDCA. The plaintiff made the same statement, a similar statement in her briefing in her prior appeal to this court. She said that Biersdorf's unlawful conduct triggering liability was its failure to seek the requisite FDA approval. And when she opposed summary judgment in the district court in this case, she argued solely that Biersdorf had failed to satisfy the federal regulatory process. So, counsel, if there were a new lawsuit filed by a different plaintiff or the same plaintiff who bought something again and was distressed by it again, but it relied only on the second alternative, Part B of the Sherman law, to say this has not been approved by the state of California, then there would be no preemption and you would win or lose on other issues. Is that your position? That's right, Judge Graber. If a plaintiff alleged that a defendant had failed to comply with the required state regulatory process, I don't think that would be preempted under Buckman. As you observed, there would be other issues with a claim like that. For example, there might be an express preemption problem. Yeah, those are not before us yet. Right. The issue that is a pivot point here would not exist in my hypothetical. The pivot point of pivoting to state law? That the complaint here is, in your view, seeking to enforce federal law rather than state law. Right. If a different complaint in a different suit sought to enforce only state law, no Buckman preemption. But I do think it's very important that, in this case, we haven't seen any arguments that would apply to a claim like that. Just as you observed, those aren't present here. We haven't discussed express preemption. Counsel mentioned earlier that the state regulatory process, she understands, is defunct. I, frankly, don't know a lot about the state regulatory process because it's never been raised. It's not part of plaintiff's theory, which solely seeks to have Beiersdorf compelled or penalized for not compelled to participate in the federal FDA regulatory process. And that's what makes it squarely within the heart of Buckman preemption. Just as I was saying. Could you address the Federal Circuit's decision in Allergan? Sure. Obviously involving the same statute. Do you think that was wrong or do you think there's some difference in the kind of claim that was at issue there? Or what do you have? What's your answer to that? Sure. A few differences. So in Allergan, for one thing, that was a suit where one competitor, Allergan, sued another competitor, Athena, under the UCL for selling an unapproved drug. So the harm alleged in that case was harm from a competitor's unfair competition, which is an actual economic injury that's recognized in traditional state law separate and apart from the FDCA. Summers here has alleged no harm of any kind, no physical injury, no misrepresentation. Another critical difference is that unlike the plaintiff in this case, Allergan claimed that the defendant's product did violate state regulatory requirements for prescription drugs. That's discussed in the Supreme Court cert briefing, which plaintiff cites in her brief. And it's also clear from the Federal Circuit's decision to reverse the district court's or to modify the injunction put in place by the district court in that case. The district court had imposed a nationwide injunction on the grounds that Athena, the defendant's product, had not been approved. And the Federal Circuit said it's got to be California only because the plaintiff alleges only violation of California's health code. Other states may not have chosen to implement state regulatory requirements that mirror the FDCA. So if we imposed using this decision, barred Athena from selling their products in those other states, that would essentially be imposing California's health code on them. It would, I have a quote here, violate their sovereignty and usurp the discretionary enforcement of the FDA. So that decision with respect to the injunction shows you that the Federal Circuit understood that as a state law case, a parallel state law case. That's exactly the theory that Summers has not advanced in this lawsuit. And that's similar for a similar reason. The other cases that Summers relies on, like Trader Joe's tuna litigation, which counsel mentioned here in the argument, are completely consistent with the finding of preemption in this case. So in Trader Joe's, the claim was that the defendant had violated a state law substantive standard on misbranding of food products that mirrored the FDCA misbranding provision. And that truly was a parallel claim that is permitted under the saving clause that Summers cited. The claim wasn't, like Summers' claim here, that Trader Joe's needed to submit its cans of tuna fish to FDA for some kind of approval process. But instead, it was that the tuna cans misrepresented the amount of tuna that was contained when measured according to the state law standards, which mirrored federal law standards. But the Trader Joe's court also held, in connection with a different claim brought under a different state's law that didn't have mirroring state law provisions, it held that a claim seeking to enforce the FDCA version of misbranding requirements would be preempted under Buckman, was preempted under Buckman. So these cases are all consistent with the finding of preemption in this case on the theory that plaintiff advances. Namely, that the only reason why the lotion is said to be unlawful, and for that reason said to violate the UCL, is that Beiersdorf did not submit the lotion to the federal regulatory process. Now, just to talk through what some of the case law says about how you identify whether a claim is a parallel claim versus a preempted effort to enforce the FDCA. So the cases point to, they say a state law claim is preempted if it is not independent of the FDA's premarket approval process. This court used those words, the en banc court, in Stengel. Well, this case is very far from independent of the FDA's approval process, since that is exactly the only reason why the plaintiff says that the lotion is unlawful. By focusing on the regulatory process also, it's completely clear that Summers is not attempting to enforce a mirror or parallel substantive provision. It's true that states can incorporate federal standards. A state can make the state substantive standard the same as a federal substantive standard. Certainly, that's permitted, and that's a parallel claim, but that is just not what Summers' claim is here, given that she says what is unlawful is Beiersdorf's failure to subject its product to the federal NDA process. It is not about not meeting a substantive, a parallel substantive standard, as Judges Graber and Lee were talking about with comparable discrimination statutes. That's just not the case with this claim here. And as I mentioned before, that's been a completely consistent theory. This isn't a matter of plucking, you know, one inartful comment out of one brief here or there. Her theory has been repeated and consistent through the complaint, through her FDA citizen petition, through the prior appeal, through her summary judgment briefing. She has always relied exclusively on federal authorities, and the sole theory advanced has been that the product was not subjected to the federal NDA process. So a claim seeking a ruling that would penalize Beiersdorf or cause Beiersdorf not to be able to sell its product solely because it hadn't gone through the FDA new drug approval process, that is a private attempt to enforce the FDCA that is at the heart of a Buckman preemption. If there are no further questions, Your Honor, I see the rest of my time. Thank you. Thank you. And you have some rebuttal time remaining. Thank you, Your Honor. Counsel for Beiersdorf just acknowledged that states can make parallel state laws, and they can do so by incorporating federal requirements as their own. That is exactly what California has done here. In Section 110110A of California's Health and Safety Code, it says, All regulations relating to new drug applications, except for abbreviated new drug applications, adopted pursuant to Section 505 of the Federal Act, shall be the new drug application requirements of this state. Similarly, in Section 110111, it says, All non-prescription drug regulations and any amendments to those regulations adopted pursuant to the Federal Act shall be the non-prescription drug regulations of the state. So California here has expressly adopted all of those as their own. Counsel, that would make sense if you were under Subsection B of the statute and arguing that these drugs did not receive state approval. But as I understand it, that is not your claim. Your claim is under A. Well, Your Honor, A actually just says that one of the following, a new drug and a new drug application. I know what it says, Counsel. We're short on time. I don't see the complaint as raising an argument under B that this substance did not receive state approval under those similar standards. Yes, and I guess what we're saying, Your Honor, I'm sorry, is that state approval isn't the issue here. California law says if you're a drug, you need an NDA, period. And if you don't have one, it violates state law. This isn't a situation that gets into federal FDA authority because nothing was ever submitted to the FDA. Thank you, Counsel. Thank you. The case just argued is submitted. These were very helpful and interesting arguments from both counsel. And we'll turn to our final case. Thank you. Thank you.
judges: Graber, Miller, Lee